IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD DEVITT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  05-2308 |
| v. | ) | |
| | ) | |
| RYERSON TULL, INC. | ) | HONORABLE DAVID H. COAR |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

**Background Facts**

Plaintiff Edward Devitt accepted a job offer for a Senior Marketing Manager position from Defendant Ryerson Tull, Inc. ("Ryerson") in late May 2002. Ryerson is a 160-year-old business headquartered in Chicago, Illinois. It purchases, processes, and distributes industrial metals including sheets, coils, bars, and tubes to manufacturers and fabricators. In 2002, Ryerson had approximately 55 metals distribution facilities nationwide. Edward Devitt has a bachelor's degree in industrial management and an MBA from Loyola University of Chicago. At the time of his interview with Ryerson, Devitt had over 20 years' experience in metals distribution, particularly dealing with aluminum.

In late winter 2002, Devitt had initial discussions with David Zallis, Vice President of Ryerson's business in the western United States, about joining Ryerson. Zallis was looking for someone with experience in aluminum for a senior marketing position and was particularly interested in Devitt. In about March 2002, Devitt met with Robert Lampi, President of Ryerson's

-1-

western business operations, about a position. Zallis and Devitt then negotiated the terms of Devitt's employment. In May 2002, Zallis told Devitt to expect a formal written job offer from Ryerson's human resources department in Chicago, which would be contingent on Devitt's acceptance of a written employment agreement. On Friday, May 17, 2002, Devitt received via email a copy of a written offer of employment from Ryerson's human resources department. This electronic copy did not include any attachments. A hard copy of the letter arrived via overnight mail on Saturday, May 18, 2002. The May 17 letter provided a tentative start date of June 3, 2002, and stated that it was "conditional, subject to ... the receipt of a signed employment agreement." Devitt was instructed to "review the enclosed agreement and return [by fax] one signed copy ... [i]n order to speed the onboarding process." But the employment agreement was not included with the hard copy of the letter. Instead, it arrived separately a few days later, signed by William Korda, Vice President of Human Resources, and dated May 20, 2002.

After receiving the proposed employment agreement, Devitt sent copies to two of his brothers, who are attorneys, and requested their opinions on it. He also recalled asking David Zallis some questions about the agreement during a telephone conversation. At some point between May 20 and June 3, 2002, Devitt states that he faxed a signed copy of at least the signature page of the employment agreement from his home fax machine to Ryerson's human resources department, using the fax number provided on the May 17 letter. Devitt has no confirmation of this fax. His home fax machine is set to generate a transmission report if there is a problem with the fax (an "error report") and to generate a list of transmissions after every 35 fax transmissions. Devitt does not recall sending a hard copy of the employment agreement to

Ryerson or contemporaneously informing anyone at Ryerson that he had faxed it back. Ryerson denies receiving the employment agreement.

On or about May 28, 2002, Ryerson sent a second written offer of employment to Devitt via overnight mail. This offer letter, dated May 28, omitted any reference to an employment agreement and provided a tentative start date of Monday, June 13, 2002.[1] In addition, the May 28 letter was unsigned. Devitt did not contact Ryerson to inquire about the May 28 letter.

Devitt worked for Ryerson from June 3, 2002 until August 1, 2003. In June 2003, Lampi informed Devitt that Ryerson was reducing its force and would be eliminating his position. Devitt did not raise the employment agreement with Lampi at that time. Ryerson's Human Resources department sent a letter dated June 18, 2003, to Devitt, which stated that Ryerson would eliminate Devitt's position effective August 1, 2003, and offered Devitt certain severance and outplacement benefits. The letter did not mention any separation rights under a written employment agreement. After he received the June 18 letter, Devitt met again with Lampi and referred to the separation benefits that had been described in the written employment agreement. Lampi told Devitt that he was unaware that Devitt had agreed to or was covered by the employment agreement.

Devitt filed his complaint in this matter on April 19, 2005, alleging breach of contract. He seeks to enforce the provisions of the employment agreement, which would have given him one year's salary, or $87,500 after his position was eliminated. Ryerson has filed a motion for summary judgment, which is pending before this Court.

---

[1] June 13, 2002 was a Thursday, however, not a Monday.

**Standard of Review**

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001). "If, however, the record as a whole 'could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *Id.* Once a motion for summary judgment has been filed, "the burden shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial." *Liu v. T&H Machine, Inc.*, 191 F.2d 790, 796 (7th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-movant must provide more than a "mere scintilla" of evidence to carry its burden under the summary judgment standard. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, weighing evidence, making credibility determinations, and drawing reasonable inferences are functions of a jury, not of a judge deciding a summary judgment motion. *Id.* at 255.

**Choice of Law**

Federal courts sitting in diversity jurisdiction apply the law of the forum state in which they sit. *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000). Illinois has adopted the Restatement (Second) of Conflicts' "significant contacts" approach for resolving choice of law disputes. *Gramercy Mills, Inc. v. Wolens*, 63 F.3d 569, 572 (7th Cir. 1995) (citing

*Palmer v. Beverly Enters.*, 823 F.2d 1105, 1108 (7th Cir. 1987)). The "significant contacts" method requires a court to evaluate five factors in making a choice of law determination in a contract dispute: 1) the place of contracting; 2) the place of negotiating; 3) the place of performance; 4) the location of the subject matter of the contract; and 5) the domicile, residence, place of incorporation and place of business of the parties. *Id*. In this case, plaintiff Devitt was domiciled in California. Defendant Ryerson Tull, Inc. is incorporated in Delaware and has its headquarters and principal place of business in Chicago, Illinois. Negotiations occurred via telephone and e-mail communication; both parties remained in their respective states. Factors 1), 2) , and 5) are evenly split between California and Illinois. As for factors 3) and 4), it is not entirely clear from the record where the contract was to be performed or the location of the subject matter thereof. Plaintiff indicated that he was able to work from his home office in California, but that he also spent some time in Defendant's Ryerson West office in Seattle, Washington. As to his work, he was hired as a Senior Marketing Manager, but the scope of his work is not evident from the evidence in the record. The Employment Agreement that is the subject of this dispute contained a choice of law clause, which stated that "[i]n the event of any dispute arising under this Agreement, it is agreed that the law of the State of Illinois shall govern the interpretation, validity, and effect of this Agreement without regard to the place of performance or execution thereof." Compl. Ex. A ¶ 16. Thus, although the formation of this contract is the crux of the present dispute, it is clear that the parties had contemplated Illinois law as governing any disputes relating to plaintiff's employment with defendant. In addition, both parties refer to Illinois law in their briefs. This Court is therefore persuaded that the parties

intended for disputes of this nature to be governed by Illinois law and, as neither party has raised any objection, Illinois law will apply.

**Formation of Contract**

The issue in this case is whether there was a contract between Devitt and Ryerson Tull that included the employment agreement. Plaintiff says Ryerson sent him an offer letter that was conditioned upon his execution and return of the employment agreement, which he claims he did. Ryerson argues that Devitt expressed reservations about portions of the agreement, and that Ryerson accordingly sent a second offer letter, which did not require an employment agreement.

As a general matter, an employment relationship without a fixed duration is terminable at will by either party. This is what is known as the "at will" employment doctrine. Parties who wish to alter this background doctrine can contract around it, by entering into an employment agreement that specifies procedures for termination and the rights and duties of both employer and employee. *See, e.g., Duldulao v. Saint Mary of Nazareth Hosp. Center*, 505 N.E.2d 314, 317 (Ill. 1987). Here, the parties agree that Ryerson conditioned its May 17 offer on Devitt's acceptance of an employment agreement. In order to create an enforceable contract, an offer must be accepted, and the acceptance must correspond with the offer in every respect, meeting all the terms proposed without going beyond them. *See, e.g., Brach v. Matteson*, 131 N.E. 804, 805-806 (Ill. 1921). When an offer is made and requires the offeree to respond by mail or telecommunication, and the answer is duly returned, then the acceptance is deemed posted and the contract complete as of the time the letter is mailed or the telecommunication is sent. This is true whether or not the offeror receives the communication and regardless of whether a letter of revocation or withdrawal of the offer is mailed before the letter of acceptance is received. Denial

of receipt creates an issue of fact. *See, e.g., Jones v. Citibank, Fed. Savings Bank*, 844 F. Supp. 437, 442 (N.D. Ill. 1994).

In the May 17 offer letter, Ryerson conditioned Devitt's employment on a pre-employment drug screen, verification of background information, and "the receipt of a signed employment agreement." The May 17 letter listed a tentative start date of June 3, 2002. The letter further instructed, "[i]n order to speed your onboarding process, please fax a copy of the signed agreement" to Ryerson's human resources staff person in Chicago, and provided a fax number. On May 28, Ryerson sent an unsigned amended offer letter which omitted any reference to the employment agreement and listed a tentative start date of June 13, 2002, but was otherwise identical to the May 17 letter. Both letters were sent via overnight delivery to Devitt's home address in Rancho Santa Margarita, California.

Devitt has produced evidence that he accepted the May 17 offer by faxing back the signed employment agreement before he received the May 28 revised offer. However, Devitt cannot recall precisely when he faxed his acceptance nor if he faxed the entire agreement rather than just the executed signature page. Ryerson contends that it never received Devitt's signed employment agreement and that the May 28 letter superseded the May 17 offer. Further, Ryerson contends that Devitt expressed reservations about some of the provisions in the employment agreement. Rather than address those concerns, Ryerson claims it opted to omit the employment agreement requirement altogether; the May 28 offer reflects that decision. Devitt disagrees, contending that he never expressed reservations to Ryerson about the agreement but rather told them that he was having the agreement reviewed by legal counsel, namely two of his brothers who are attorneys, as the employment agreement itself suggested. This Court finds that the issue

of whether and when Devitt accepted Ryerson's May 17 offer by faxing a signed copy of the employment agreement to Ryerson is highly material to the resolution of this case. Given the disputed evidence in the record before this Court, summary judgment is inappropriate.

## Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is DENIED.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **April 25, 2006**